IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**RUSSELL O. HARDIN,**                                                    **PLAINTIFF**

**V.**                                                          **NO. 1:08CV036-A-D**

**JIM JOHNSON, et al.,**                                                **DEFENDANTS**

**MEMORANDUM OPINION**

  This matter is before the court, *sua sponte*, for consideration of dismissal.  Plaintiff, an inmate currently being housed at the Lee County Jail filed this matter pursuant to 42 U.S.C. § 1983.

  Plaintiff's complaint includes numerous grievances for which he is seeking monetary damages for emotional pain and suffering.  Plaintiff complains about nearly every facet of prison life from the quality of food to being assaulted.  The more distinct claims include: (1) being served chicken that made numerous inmates sick; (2) having his fingerprints taken without a warrant; (3) being overcharged for postage stamps;  and, (4) being denied access to the law library.  Other than his allegation of suffering from a food born illness on one occasion, Plaintiff has not asserted any physical injury.

*A.  Analysis*

1.  Food Handling

  Plaintiff avers that "chicken strips served on Sunday January 27, 2008, made numerous inmates sick and have to visit the clinic."  He adds that Defendants allowed "spoiled chicken" to be served and continue to handle food improperly.  Hardin does not take issue with any medical treatment he may have received.

  A state's duty to provide for inmate's "basic human need–*e.g.*, food, clothing, shelter, medical care, and reasonable safety" flows from the Eighth Amendment's prohibition against cruel and unusual punishment.  *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). When an inmate alleges an Eighth Amendment violation, the appropriate inquiry in such

circumstances is whether prison officials exhibited "deliberate indifference" to a known substantial risk to inmate's health or safety. The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. To establish municipal liability, as opposed to individual liability, a plaintiff must demonstrate a municipal employee's subjective indifference and additionally that the municipal employee's act "resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff]'s constitutional rights." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (citations omitted). Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

The Fifth Circuit has held, albeit in an unpublished opinion, that negligent management of food services within a prison does not state a constitutional claim. *Flowers v. Dent*, 1994 WL 171707, 21 F.3d 1109 (5th Cir. 1994). The unsanitary conditions complained of in *Flowers* included filth, rodent droppings, rodent and insect infestation. *Id.* at *1. The *Flowers* court refused to accept the inmate's argument that spoiled food was served purposely for punishment. *Id.* at *3. Despite the deplorable conditions, the court held that mere negligent food service management was not a constitutional violation. *Id.*

Similar to the present case, in *Hooks v. Dallas County Sheriff*, 1993 WL 82390 at *1, 988 F.2d 1213 (5th Cir. 1993), another unpublished opinion, the Fifth Circuit held that an inmate failed to state a constitutional claim after he became physically ill from eating "bad peas." The court found

that the negligent serving of "bad peas" did not rise to the level of cruel and unusual punishment. *Id.* at *1. Discussing the allegation of prolonged internal stomach injuries, the court rejected Hooks' claim and further found that it was "factually frivolous." *Id.* Also in an unpublished opinion cited by both *Flowers* and *Hooks*, the Fifth Circuit ruled that improper food handling amounted to no more than negligence. *See Flowers*, 1994 WL 171707 at *2; *Hooks*, 1993 WL 82390 at *1 (both citing *Berry v. Griffith*, No. 91-5078 (5th Cir. Apr. 22, 1992)).

Such appears to be the case here. Hardin contends generally that food is being mishandled but fails to provide any helpful elaboration. Accepting as fact that ingesting spoiled chicken actually made Hardin sick, his own complaint alleges at best an isolated incident of "mishandling" or "mismanagment" rather than purposeful or wanton conduct. Hardin's accusations fall far short of the egregious unsanitary conditions described in *Flowers* and are nearly identical to the facts of *Hooks* both of which were found insufficient to state a violation of the Eighth Amendment. In accordance with the Fifth Circuit's previous holdings, the court finds that a single occurrence of a food born illness purportedly due to improper handling amounts to nothing more than mere negligence which is plainly not a constitutional concern. Therefore, Hardin's claim shall be dismissed.

### 2. Warrantless Fingerprints

Hardin complains that he was assaulted by Defendant Partlow when he, Hardin, refused to cooperate for fingerprinting. Hardin states that he insisted Defendant obtain a warrant because his fingerprints are personal property. Above Hardin's protests, Partlow allegedly held him down and beat his hand on the machine to take the fingerprints. Hardin does not allege any physical injury.

Giving Plaintiff's complaint liberal construction as required by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d (1972), he may possibly be attempting to state an excessive force claim in violation of the Eighth Amendment or a violation of the Fourth Amendment for a warrantless search/seizure. The court will briefly consider both issues.

When reviewing an excessive force claim, courts must balance the constitutional rights of prisoners with the needs of officials to effectively use force to maintain order. *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). To establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." S*ee Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Not every malevolent touch gives rise to a constitutional claim of excessive force; in fact, the Eighth Amendment prohibition against "'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (citations omitted). A *de minimis* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). A single incident of force or a single blow is *de minimis* and thus does not violate the Eighth Amendment. *Id*. at 700.

Taking Hardin's allegations as true, it is clear the force Paltrow applied was not done so maliciously or sadistically. Rather, it is admitted the force used by Defendant Paltrow was to gain Hardin's compliance. Furthermore, Hardin does not allege any physical injury was caused by the skirmish. Therefore, the court finds that the force used to obtain Hardin's fingerprints was *de minimis* and insufficient to state a claim for violation of the Eighth Amendment.

Similarly, to the extent Hardin is claiming a violation of the right against self-incrimination, it has long been held that fingerprints are not protected by the Fifth Amendment privilege. *U.S. v. Dionisio*, 410 U.S. 1, 6-7, 93 S.Ct. 764, 767-68, 35 L.Ed.2d 67 (1973); *In re Grand Jury Proceedings*, 558 F.2d 1177 (5th Cir. 1977).

On the other hand, it is true that the taking of fingerprints without a warrant when there is no probable cause for an arrest can support a constitutional claim for violation of the Fourth Amendment. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 679 (1969). Also, detention by the government for the sole purpose of fingerprinting is a search within the meaning

of the Fourth Amendment and may support a claim for damages. *Id.* The taking of fingerprints pursuant to a lawful arrest or detention, however, does not support a constitutional claim. *Schmerber v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966) (taking blood incident to lawful arrest for driving under the influence did not violate the Fourteenth Amendment).[1]

Based on the minimal facts presented in the complaint, the court cannot conclusively determine whether or not Hardin can maintain a claim for violation of the Fourth Amendment. He simply argues that his fingerprints were taken without a warrant and, thus, he is entitled to monetary damages. By omission, Hardin has not challenged the validity of his arrest and current confinement. The possibility exists, albeit a slim one, that Hardin may have at the very least stated a claim. As a result, he shall be afforded a *Spears* hearing for the sole purpose of clarifying the possible violation of the Fourth Amendment arising out of the alleged warrantless fingerprinting.

### 3. Postage Stamps

Next, Hardin complains about the cost of postage stamps being offered to inmates through the commissary. He states that a book of ten $.41 stamps costs $4.20 in contradiction of federal postage laws. In other words, the commissary is overcharging for a book of stamps by ten cents. The court is unaware of any federal law that would curtail the amount a business, other than the United States Postal Service, charges for stamps.

At least one circuit court, however, has held that a prisoner has no constitutional right to purchase stamps as cheaply as possible. *McCall v. Keefe Supply Co.*, 2003 WL 21716435 at *1, 71 Fed. Appx. 779, 780 (10th Cir. 2003). There is no legal basis to demand that inmates be offered items to be purchased at or near cost. *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980); *see, also Pepper v. Carroll*, 423 F. Supp. 2d 442, 449 (D. Del. 2006) (prisoner has no constitutionally protected right to purchase commissary items as cheaply as possible); *Rodriguez v. Swanson Serv.*

---

[1] Further complicating the issue, under Mississippi law a defendant has a right to be informed that he can refuse to be fingerprinted. *Hooker v. State*, 716 So.2d 1104, 1112 (Miss. 1998).

*Corp.*, No. 01-117-P-C, 2001 WL 506871 at *1 (D. Me. May 11, 2001) (commissary pricing does not implicate constitutional concerns); *Hopkins v. Keefe Commissary Network Sales*, No. 07-745, 2007 WL 2080480 at *5 (W.D. Pa. Jul. 12, 2007) (no right to restrain commissary from charging even exorbitant prices); *Trujillo v. Young*, No. 7:02CV01083, 2003 WL 23312781 at *3 (W.D. Va. Jun. 5, 2003) (prisoner has no protected right to purchase commissary items at low prices). The additional ten cents the commissary charges for a book of ten $.41 stamps can hardly be considered excessive, burdensome or exorbitant. Obviously, the laws of economics dictate that if the commissary charged only face value for the stamps it would do so to its financial detriment. In any event, Hardin's claim of outrageous overcharging of stamps does not implicate the constitution and shall be dismissed.

4. Access to the Law Library

Finally, Hardin contends that certain Defendants have denied him access to the law library which prohibits him from seeking redress for his grievances through the courts. To support a claim for denial of access to the courts based on the lack of access to a library, Hardin mush show not only the denial but also an actual injury resulting from the denial. *Lewis v. Casey*, 518 U.S. 343, 349-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiff has failed to "identify a 'nonfrivolous,' 'arguable' underlying claim" that he has been unable to pursue. *See Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (quoting *Lewis*). Absent an actual injury through prejudice as a litigant in a pending litigation or inability to transmit legal documents, Hardin is not entitled to relief based on denial of access to the courts.[2] *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).

*B. Conclusion*

---

[2] Indeed, the present complaint, consisting of 15 pages, refutes Hardin's allegation that any limitations on access to the law library has denied him access to the courts. *See Mann v. Smith*, 796 F.2d 79, 84, n.5 (5th Cir. 1986).

      As discussed in detail above, Plaintiff's allegations of improper food handling, excessive commissary prices and access to the library are not supported by the facts or provide no legal basis for relief. All of Plaintiff's claims shall be dismissed save one–a potential violation of the Fourth Amendment. By further order of the court, Plaintiff shall be afforded the opportunity to clarify only the facts related to his Fourth Amendment claim at a *Spears* hearing.

      A separate order in accordance with this opinion will be entered.

      THIS the __1st__ day of April, 2008.

      __/s/ Sharion Aycock__
      **U.S. DISTRICT JUDGE**